UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUZ CRESPO,

                                    Plaintiff,

        -v-

MARTIN O'MALLEY, Commissioner of Social
Security,[1]

                                    Defendant.

CIVIL ACTION NO.: 22 Civ. 954 (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.      INTRODUCTION

Plaintiff Luz Crespo ("Ms. Crespo") commenced this action pursuant to Section 205(g) of

the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), seeking review of the decision

by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA") denying

her application for Disability Insurance Benefits ("DIB") under the Act.    (ECF No. 1

(the "Complaint")).  Ms. Crespo contends that the decision of the Administrative Law Judge dated

September 28, 2020 (the "ALJ Decision") was erroneous, not supported by substantial evidence,

and contrary to law, and asks the Court to reverse the ALJ Decision and enter an award of

benefits, or remand for a new hearing to reconsider the evidence.  (Id. ¶¶ 5–7).

Ms. Crespo filed a motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56(a), which the Court construes as a motion for judgment on the pleadings pursuant

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of the Social Security Administration.  See Torres v. O'Malley, No. 21 Civ. 7294 (VF), 2024 WL 988356, at *4 (S.D.N.Y. Mar. 7, 2024).  Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of the Court is respectfully directed to substitute "Martin O'Malley, Commissioner of Social Security" for "Kilolo Kijakazi, Acting Commissioner of Social Security" as the Defendant in the caption of this action.

to Federal Rule of Civil Procedure 12(c) (ECF No. 15 ("Ms. Crespo's Motion")),[2] and the Commissioner cross-moved for judgment on the pleadings.  (ECF No. 22 (the "Commissioner's Motion")).  For the reasons set forth below, Ms. Crespo's Motion is DENIED, the Commissioner's Motion is GRANTED, and this action is DISMISSED.

## II.   BACKGROUND

### A.  Medical Evidence

Ms. Crespo has provided a detailed summary of the medical evidence and underlying proceedings (ECF No. 16 at 5–9), which the Commissioner adopts as supplemented by additional facts set forth in the Commissioner's Motion.  (ECF No. 23 at 7–9).  Accordingly, the Court adopts the parties' summaries of the medical evidence as accurate and complete for purposes of reviewing the ALJ Decision and discusses below the medical evidence necessary for that review.  (See § III.B, infra).

### B.  Administrative Proceedings

#### 1.  The ALJ Decision

On September 28, 2020, ALJ Raymond Prybylski (the "ALJ"), issued the ALJ Decision denying Ms. Crespo's August 5, 2019 application for DIB.  (R. 15–30).[3]  The ALJ first found that

---

[2] Ms. Crespo's failure to file a Local Rule 56.1 statement in support of her Motion, which is required by Local Civil Rule 56.1(a) and (d), would ordinarily require denial of her Motion.  See T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009) ("The requirement [in Local Rule 56.1] is strict; failure to submit a Rule 56.1 statement with a motion for summary judgment may result in the motion's denial."); Velasquez v. Comm'r of Soc. Sec. Admin., No. 22 Civ. 6777 (JMA), 2024 WL 22786, at *4 n.4 (E.D.N.Y. Jan. 2, 2024) (noting that failure to file Local Civil Rule 56.1 statement provided alternative ground for denial of summary judgment).  "As Rule 56 is generally not considered the proper procedural vehicle for challenging a disability determination of the Commissioner," however, the Court "will treat [Ms. Crespo's] [M]otion as a motion under [Federal] Rule [of Civil Procedure] 12(c)."  Anzola v. Berryhill, No. 18 Civ. 11217 (VSB) (DCF), 2019 WL 10630956, at *1 n.2 (S.D.N.Y. Dec. 20, 2019), adopted by, 2020 WL 5646329 (S.D.N.Y. Sept. 21, 2020); accord Gray v. Kijakazi, No. 20 Civ. 4636 (SLC), 2022 WL 974385, at *1 (S.D.N.Y. Mar. 31, 2022).
[3] Citations to "R." refer to the Administrative Record.  (ECF Nos. 14 – 14-4).

Ms. Crespo had not engaged in substantial gainful activity since November 20, 2016 (the "Onset Date"), and met the insured status requirements of the Act through September 30, 2021. (R. 17).[4]  The ALJ next found that Ms. Crespo had the following severe impairments:  (i) cervical strain and sprain of unspecified neck joints and ligaments, (ii) sprain of the left hand with third digit proximal interphalangeal ("PIP") joint sprain, (iii) status post-operative arthroscopic repair of the rotator cuff and labrum tear of the left shoulder, and (iv) obesity.  (R. 18).  The ALJ found, however, that Ms. Crespo did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 403, Subpart P, Appendix 1 (the "Listings").  (R. 20–22).  Specifically, the ALJ found that Ms. Crespo's (i) status post-operative surgical repair of the rotator cuff and labrum tear of the left shoulder, combined with the left-hand sprain, did not meet Listing 1.02(B); (ii) cervical strain and sprain of unspecified neck joints and ligaments did not meet Listing 1.04 or 1.00(B)(2)(b); and (iii) obesity did not meet any Listing.[5]  (R. 20–22).

The ALJ then determined that Ms. Crespo had the residual functional capacity:

to perform light work as defined in 20 C[.]F[.]R[.] [§] 404.1567(b) except [she] can never climb ladders, ropes or scaffolds[;] . . . can occasionally stoop and never crawl[;] . . . cannot perform any overhead reaching on the left, non-dominant, upper extremity[;] . . . can occasionally perform fine manipulation[; and] . . . would be on task 95 percent of the time during the workday.

---

[4] To qualify for DIB, one must be both disabled and insured for benefits.  See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.120, 404.315(a).  The last date a person meets the insurance requirement is the date by which the claimant must establish a disability.

[5] "The Court notes that Listings 1.02 [(major joint dysfunction)] and 1.04 [(disorders of the spine)] were eliminated as of April 2, 2021."  Garcia v. Comm'r of Soc. Sec., No. 20 Civ. 7539 (PAE) (SLC), 2022 WL 1051134, at *5 n.11 (S.D.N.Y. Jan. 31, 2022) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1), adopted by, 2022 WL 970566 (S.D.N.Y. Mar. 31, 2022).  "Because they were in effect at the time of the ALJ's Decision, however, they still control for purposes of the Court's analysis."  Id. (citing Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (summary order) (applying Listing "in effect when the ALJ adjudicated [the challenged] disability claim")).

(R. 22 (the "RFC")).  The ALJ found that Ms. Crespo could not perform her past relevant work as a hospital cleaner.  (R. 28).  The ALJ then found, based on the testimony of a vocational expert (the "VE"), that, considering her age (47 on the Onset Date, making her a "younger" individual as defined in 20 C.F.R. § 404.1563(c)), education (high school), and RFC, there were jobs in significant numbers in the national economy that she could perform.  (R. 28–29).  Those jobs included (i) housekeeping cleaner, Dictionary of Occupational Titles ("DOT") code 323.687-014, of which there were 229,000 jobs in the national economy; (ii) cafeteria attendant, DOT code 311.677-010, of which there were 61,000 jobs; and (iii) produce weigher, DOT code 299.587-010, of which there were 9,000 jobs.  (R. 29).  Accordingly, the ALJ found that Ms. Crespo had not been under a disability as defined under the Act and was not entitled to DIB from the Onset Date through the date of the ALJ Decision.  (R. 29–30).

On December 13, 2021, the Appeals Council denied Ms. Crespo's request for review, making the ALJ Decision the final decision of the Commissioner.  (R. 1–6).

### C. <u>Procedural History</u>

On February 2, 2022, Ms. Crespo, through counsel, filed the Complaint commencing this action.  (ECF No. 1).  The parties thereafter consented to Magistrate Judge jurisdiction for all purposes.  (ECF No. 13).  On March 13, 2023, Ms. Crespo filed her Motion (ECF No. 15), and on July 26, 2023, the Commissioner filed his Motion.  (ECF No. 22).  On August 8, 2023, Ms. Crespo filed a reply in further support of her Motion.  (ECF No. 24).

### III.    DISCUSSION

**A.  Applicable Legal Standards**

**1.  Standard of Review**

Under Rule 12(c), a party is entitled to judgment on the pleadings if she establishes that no material facts are in dispute and that she is entitled to judgment as a matter of law. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).[6]  The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A court may set aside the Commissioner's decision denying DIB if it is not supported by substantial evidence or was based on legal error.  See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).  Judicial review, therefore, involves two levels of inquiry.  First, the Court must decide whether the ALJ applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008).  Second, the Court must decide whether the ALJ's decision was supported by substantial evidence.  Tejada, 167 F.3d at 773.  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).  The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions

---

[6] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).  In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly.  See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam).  The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant.  See, e.g., Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Thomas v. Comm'r of Soc. Sec. Admin., 479 F. Supp. 3d 66, 82 (S.D.N.Y. Aug. 18, 2020) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel.  See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009). To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources.  20 C.F.R. § 404.1512(b).  Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." Rosario v. Comm'r of Soc. Sec., No. 20 Civ. 7749 (SLC), 2022 WL 819810, at *6 (S.D.N.Y. Mar. 18, 2022).  When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  20 C.F.R. § 404.1520b.

The Act authorizes a court, when reviewing decisions of the SSA, to order further proceedings:  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004) ("Butts I"), amended in part on other grounds, 416 F.3d 101 (2d Cir. 2005) ("Butts II").  If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the Court will remand the case for further development of the evidence or for more specific findings.  Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts, 94 F.3d at 39.  If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate. See, e.g., Butts I, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).

### 2.  Standards for Benefit Eligibility

For purposes of DIB, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 1382c(3)(B).  In reviewing a claim of disability, the Commissioner must consider:  "(1) objective medical facts; (2) diagnoses or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses;

and (4) the claimant's background, age, and experience." Williams ex rel. Williams v. Bowen,

859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential

five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v).  The Second Circuit has described

the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in
> substantial gainful activity.  If not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on the medical evidence,
> the claimant has an impairment which is listed in Appendix 1 of the regulations.  If
> the claimant has such an impairment, the Secretary will consider him disabled
> without considering vocational factors such as age, education, and work
> experience; the Secretary presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.  Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether, despite
> the claimant's severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform his past work,
> the Secretary then determines whether there is other work which the Claimant
> could perform.

Bush v. Shalala, 94 F. 3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722

(2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof.  At the fifth step, the

burden shifts to the Commissioner to demonstrate that there are jobs in the national economy

that the claimant can perform.  See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009)

(per curiam).  In meeting the burden of proof at the fifth step, the Commissioner can usually rely

on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known

as "the Grid."  Zorilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### 3. **Medical Opinion Evidence**

For benefits applications filed before March 27, 2017, the SSA's regulations required an ALJ to give more weight to those physicians with the most significant relationship with the claimant. See 20 C.F.R. § 404.1527; see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004) (summary order). Under this "[T]reating [P]hysician [R]ule," an ALJ was required to "give good reasons" Kevin E. v. Comm'r of Soc. Sec., No. 19 Civ. 593 (EAW), 2021 WL 1100362, at *3–4 (W.D.N.Y. Mar. 23, 2021) (quoting former 20 C.F.R. § 404.1527(c)(2)), if he or she determined that a treating physician's opinion was not entitled to "controlling weight," or, at least, "greater weight" than the opinions of non-treating and non-examining sources. Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588–89 (S.D.N.Y. 2000). In addition, under the Treating Physician Rule, a consultative physician's opinion was generally entitled to "little weight." Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (summary order) (quoting Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990)).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence, revisions that were effective on March 27, 2017. See Revisions to Rules Regarding the Evaluation of Med. Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017). These new regulations reflect a move away from a perceived hierarchy of medical sources. See id. The regulations now provide that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[7]

---

[7] The new regulations define "prior administrative medical finding" as:
> [A] finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological

20 C.F.R. § 404.1520c(a).  See Young v. Kijakazi, No. 20 Civ. 3604 (SDA), 2021 WL 4148733, at *9

(S.D.N.Y. Sept. 13, 2021).  Instead, an ALJ must consider all medical opinions in the record and

"evaluate the[ir] persuasiveness" based on five "factors":  (1) supportability, (2) consistency, (3)

relationship of the source with the claimant, (4) the medical source's specialization, and (5) any

"other" factor that "tend[s] to support or contradict a medical opinion[.]"

20 C.F.R. § 404.1520c(c)(1)–(5).

The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. § 404.1520c(a).

Under the new regulations, the ALJ must "explain[,]" in all cases, "how [he or she] considered"

both the supportability and consistency factors, as they are "the most important factors[.]"  Id.

§ 404.1520c(b)(2); see Young, 2021 WL 4148733, at *9 (describing supportability and consistency

as "the most important" of the five factors).  As to supportability, "the strength of a medical

opinion increases as the relevance of the objective medical evidence and explanations presented

by the medical source increase."  Vellone v. Saul, No. 20 Civ. 261 (RA) (KHP), 2021 WL 319354,

at *6 (S.D.N.Y. Jan. 29, 2021) ("Vellone I") (citing 20 C.F.R. § 404.1520c(c)(1)), adopted by,

2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("Vellone II").  Consistency "is an all-encompassing

inquiry focused on how well a medical source is supported, or not supported, by the entire

---

consultants at a prior level of review (see § 404.900) in your current claim based on their
review of the evidence in your case record, such as:  (i) The existence and severity of your
impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about
whether your impairment(s) meets or medically equals any listing in the Listing of
Impairments in Part 404, Subpart P, Appendix 1; (iv) If you are a child, statements about
whether your impairment(s) functionally equals the listings in Part 404, Subpart P,
Appendix 1; (v) If you are an adult, your [RFC]; (vi) Whether your impairment(s) meets the
duration requirement; and (vii) How failure to follow prescribed treatment (see
§ 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.
20 C.F.R. § 404.1513(a)(5).

record." <u>Vellone I</u>, 2021 WL 319354, at *6; <u>see</u> 42 U.S.C. § 423(f) (requiring ALJ to base decision on "all the evidence available in the" record).

As to the three remaining factors—relationship with the claimant, specialization, and "other"—the ALJ is required to consider them in determining the persuasiveness of the opinion of a medical source but need not explicitly discuss them.  20 C.F.R. § 404.1520c(b)(2).  If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how he or she considered those three remaining factors. <u>See</u> <u>id.</u> § 404.1520c(b)(3).

### 4.  <u>Assessing a Claimant's Subjective Allegations</u>

In considering a claimant's symptoms that allegedly limit her ability to work, the ALJ must first determine "whether there is an underlying medically determinable physical or mental impairment(s)" SSR 16-3p, 2017 WL 5180304, at *3—<u>i.e.,</u> "an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques" 20 C.F.R. § 404.1521— "that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3; <u>see</u> 20 C.F.R. § 404.1529(c).  If such an impairment is found, the ALJ must next evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. 20 C.F.R. § 404.1529(c)(1).  To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility. <u>See</u> <u>Meadors v. Astrue</u>, 370 F. App'x 179, 183–84 (2d Cir. 2010) (summary order); <u>Taylor v. Barnhart</u>, 83 F. App'x 347, 350–51 (2d Cir. 2003) (summary order).

Courts have recognized that "the second stage of [the] analysis may itself involve two parts." Sanchez v. Astrue, No. 07 Civ. 931 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010). "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)." Id. "Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed [in 20 C.F.R. § 404.1529(c)(3)]." Id. (citing Gittens v. Astrue, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)).  If the ALJ does not follow these steps, remand is appropriate.  Id. at *15.

When a claimant reports symptoms that are more severe than medical evidence alone would suggest, SSA regulations require the reviewing ALJ to consider specific factors in determining the credibility of the claimant's symptoms and their limiting effects.  SSR 16-3p, 2017 WL 5180304, at *7–8.  These seven factors include:  (1) an individual's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Id.; see Bush, 94 F.3d at 46 n.4.

B. **Evaluation of the ALJ Decision**

Ms. Crespo's arguments in support of her request for reversal of the ALJ Decision fall into two principal categories:  (1) the ALJ erred in assessing Ms. Crespo's RFC; and (2) challenges to the VE's testimony and conclusions.  (ECF No. 16 at 10–15).

1. **RFC**

The Court interprets Ms. Crespo to mount, essentially, two challenges to the ALJ's determination of her RFC:  (1) the ALJ erred "in finding no limitations in Ms. Crespo's ability to handle and feel[;]" and (2) because the ALJ failed to assess her "capacity to perform physical functions in order to decide which exertional level is appropriate and whether [she] is capable of doing the full range of work contemplated by the exertional level[,]" substantial evidence does not support the ALJ's finding that she has the ability to do light work.  (ECF No. 16 at 11–15).  The Commissioner responds that substantial evidence supports the ALJ's determination of Ms. Crespo's RFC, and she has not satisfied her burden to show that greater limitations are required.  (ECF No. 23 at 13–16).  The Court agrees with the Commissioner.

A DIB claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]"  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).  "When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole."  Dritan Q. v. Comm'r of Soc. Sec., No. 23 Civ. 997 (GRJ), 2023 WL 7131858, at *6 (S.D.N.Y. Oct. 30, 2023) (citing 20 C.F.R. § 404.1527(d)(2) ("Although [the Commissioner] consider[s] opinions from medical

sources on issues such as . . . [a claimant's] residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.")).

Here, the ALJ determined that Mr. Crespo retained the ability to perform "light work," (R. 22), which the Commissioner has defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,] . . . a good deal of walking or standing, or [] sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  After taking into account "the entire record," the ALJ added several limitations to the scope of the light work Ms. Crespo could perform:  (1) never climb ladders, ropes, or scaffolds; (2) occasional stooping; (3) never crawl; (4) no overhead reaching with the left arm; and (5) occasionally performing fine manipulation.  (R. 22).  The Court finds that the ALJ's determination of Ms. Crespo's RFC is supported by substantial evidence for two reasons.

First, as to Ms. Crespo's complaint that the ALJ failed to include in the RFC limitations in her ability to handle and feel with her left hand, the ALJ Decision demonstrates that the ALJ carefully reviewed the medical records, which, he recognized, include a history of "mildly reduced range of motion of the left upper extremity and swelling, numbness and tingling in her hands[.]" (R. 21; see R. 23 (noting "small effusion [swelling]" at third joint on left middle finger) (citing R. 381)).  Despite that evidence, however, the ALJ considered both Ms. Crespo's own statements about her ability to maintain personal hygiene, feed herself, and prepare simple meals for herself and family members (R. 53, 235–37), as well as the musculoskeletal and neurological examinations, which "revealed no significant range of motion, motor strength, reflex or sensory deficits of the left upper extremity, wrists and hands" and "no evidence of asymmetry, laxity,

subluxation, dislocation, or other deformities[.]"  (R. 21 (citing R. 340, 393–95, 401–03, 408–09, 419–21, 458, 462, 470, 476, 488, 491, 503, 506, 509, 512, 515, 518, 521, 1172, 1175, 1178, 1181, 1184, 1187, 1190, 1193, 1196, 1279–80)).  Substantial evidence supports the ALJ's conclusion.  For example, Ms. Cespo's treating orthopedist, Elal Faierman, M.D., at the Center for Orthopaedic Surgery, regularly found during the relevant time period that despite "[r]ecurrent left shoulder internal derangement/sprain," and "consequential left hand and left middle finger internal derangement" (R. 1181), she displayed "5/5 motor strength in all upper extremity muscle groups[,]" "normal sensation to light touch in all upper extremity distributions bilaterally," and "[n]ormal deep tendon reflexes" in both arms.  (R. 1193; see 1172, 1175, 1178, 1181, 1184, 1187, 1190, 1193, 1196, 1199, 1202).  Similarly, independent orthopedic examiner Lisa Nason, M.D. ("Dr. Nason"), examined Ms. Crespo on August 4, 2016, and noted "mild swelling" of her left middle finger, but no atrophy, normal extension and flexion against resistance, and only mild narrowing of the range of motion (R. 406–10).  When Dr. Nason examined her again on December 7, 2017, the range of motion for the left middle finger had improved to nearly normal ranges.  (R. 421).  Furthermore, only conservative treatment, including physical and occupational therapy, splints, and pain medication, were prescribed.  (See, e.g., R. 431, 458, 462, 466, 575–803).  In any event, the ALJ expressly noted that he considered Ms. Crespo's "reduced range of motion" and "pain and numbing in her fingers . . . in assessing her [RFC]."  (R. 24).  Ms. Crespo is simply incorrect that the ALJ failed to consider her ability to handle and feel in assessing her RFC, and to the extent she is asking to reweigh the record and reach a more favorable RFC, that is not the province of this Court.  See Rivera v. Comm'r of Soc. Sec., 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019) ("[T]he reviewing court's task is limited to determining whether substantial evidence exists

to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than interpretation.").

Second, while Ms. Crespo argues that the ALJ failed to assess her "capacity to perform physical functions in order to decide which exertional level is appropriate and whether [she] is capable of doing the full range of work contemplated by the exertional level[,]" she points to no evidence in the record in support of this argument.  (ECF No. 16 at 15).  Thus, as an initial matter, Ms. Crespo has not met her burden to prove that her conditions necessitated a more restrictive RFC than the one assessed by the ALJ.  See Finn v. Comm'r of Soc. Sec., No. 21 Civ. 5457 (SLC), 2022 WL 4245196, at *7 (S.D.N.Y. Sept. 15, 2022) (finding that claimant failed to carry burden to show that medication side effects required more restrictive RFC); Villalobo v. Saul, No. 19 Civ. 11560 (CS) (JCM), 2021 WL 830034, at *16 (S.D.N.Y. Feb. 9, 2021) ("It is ultimately the claimant's burden to prove that [he or she] should have a more restrictive RFC than the one assessed by the ALJ."), adopted by, 2021 WL 735734 (S.D.N.Y. Feb. 25, 2021) (citing Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order)).  To the extent that she relies on a May 2017 observation by her occupational therapist of "decreased grip strength, decreased pinch strength and increased pain in Left hand" (ECF No. 16 at 12 (citing R. 786)), the Court finds that the ALJ reasonably reconciled this information in light of "the treatment record and medical opinion evidence in formulating an RFC supported by substantial evidence."   Dritan Q., 2023 WL 7131858, at *7 (citing Trepanier v. Comm'r of Soc. Sec. Admin., 752 F. App'x 75, 79 (2d Cir. 2018) (summary order) (in affirming conclusion that substantial evidence supported ALJ's RFC determination, noting that "the ALJ was entitled to weigh all of the evidence available to make a residual functional capacity finding that was consistent with the record as a whole")).

While noting the extensive findings showing "no evidence of any motor strength, reflex or sensory deficits, weakness or muscle atrophy; asymmetry, laxity, subluxation, dislocation, or other deformities" (R. 26 (citing R. 340, 393–95, 401–03, 408–09, 419–21, 458, 462, 470, 476, 488, 491, 503, 506, 509, 512, 515, 518, 521, 1172, 1175, 1178, 1181, 1184, 1187, 1190, 1193, 1196, 1279–80)), the ALJ also took into account Ms. Crespo's "difficulty performing any heavy lifting, triggering, pain and numbness in her fingers" in determining the need to include in the RFC "the additional postural, manipulative and time off tasks provisions[.]"  (R. 26 (citing 234–43); see R. 43–53).  Furthermore, while the ALJ found "generally persuasive" the medical opinion of independent consultative examiner Saundra Nickens, M.D. ("Dr. Nickens"), that Ms. Crespo had "no objective physical or functional limitations" (R. 26 (citing R. 1280)), the ALJ also concluded that Dr. Nickens' opinion failed to account for "longitudinal evidence and [Ms. Crespo's] testimony show[ing] . . . greater functional limitations due to her musculoskeletal impairments, cervical radiculopathy and added effects of her obesity[,]" all of which supported the ALJ's determination that Ms. Crespo's RFC include "the limitation to the light exertional level with additional postural and manipulative limitations[.]"  (R. 26).  Finally, the ALJ noted that the limitations he imposed in the RFC were consistent with the findings and opinion of Dr. Nason that Ms. Crespo "could lift no greater than 20 pounds and should avoid gripping with the left hand[.]"  (R. 26–27).  Therefore, the Court finds that substantial evidence supports the ALJ's determination of Ms. Crespo's RFC.

To the extent that Ms. Crespo is suggesting an alternative reading of the record to support her assertion that a more restrictive RFC is appropriate, the Court must defer to the Commissioner's role to resolve any conflicts in the evidence.  See Veino v. Barnhart, 312 F.3d 578,

588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). That there may be some evidence arguably supporting an alternative assessment does not provide a basis for the Court to disturb the ALJ's RFC determination under the applicable deferential standard of review. See Brault v. SSA, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) ("The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."); see also McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Thus, while Ms. Crespo undoubtedly suffers from some pain and limitation, the ALJ did not dismiss that evidence but rather found that she was limited to a reduced range of light work in the RFC a result. (R. 22). Of course, "disability requires more than mere inability to work without pain." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). Here, the Court finds that the ALJ offered specific support, including references to Ms. Crespo's testimony, treatment notes, and medical opinion evidence, for the conclusion that Ms. Crespo retained the RFC to perform a reduced range of light work with limitations, which is sufficient to sustain the ALJ Decision under the applicable deferential standard of review.

### 2. **Step Five Analysis**

Ms. Crespo presses two challenges to the ALJ's conclusions at step five of the sequential analysis: (1) the VE's testimony conflicted with the DOT; and (2) the jobs the VE listed do not exist in significant number in the national economy. (ECF No. 16 at 10–11). The Commissioner responds that there is no conflict between the VE's testimony and the DOT, and, in any event,

the VE provided a satisfactory explanation, which Ms. Crespo's counsel did not challenge during the Hearing.  (ECF No. 23 at 16–19).

As noted above, at step five, the Commissioner determines whether a claimant can perform work that exists in significant numbers in the national economy, as to which the Commissioner bears the burden of proof.  See Butts II, 416 F.3d at 103; 20 C.F.R. §404.1560(c)(2). Here, that ALJ found that there were three jobs that exist in significant numbers in the national economy that Ms. Crespo, with her RFC, can perform.  (R. 28–29).  In reaching that conclusion, the ALJ relied on the testimony of the VE that a hypothetical claimant with Ms. Crespo's RFC could perform the jobs of housekeeping cleaner, cafeteria attendant, and produce weigher, which exist in significant numbers in the national economy.  (R. 55–58).  When the ALJ asked whether the VE's testimony was consistent with the DOT, the VE responded that it was, "and where the DOT is silent[,]" she "based [her opinion] on [her] professional experience and knowledge of these positions like the overhead reaching and off task."  (R. 58–59).  As required by SSA Policy Interpretation Rule 00-4p ("SSR 00-4p"), the ALJ determined that the VE's testimony was consistent with the DOT, which "does not specify the directions in which a person performing the job is required to reach[,]" and "only contemplates reaching in general[.]"   (R. 29). See SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  Thus, because "it remains possible to reach in other directions frequently in order to perform job duties satisfactorily[,]" and the VE testified, based on her education, training, and experience, that Ms. Crespo "could still perform the given jobs, at the light exertional level with the additional limitations," the ALJ determined that he could rely on the VE's testimony in determining that Ms. Crespo was not disabled.  (R. 29).

Ms. Crespo first argues that the ALJ's finding that she could not perform reaching with her upper left extremity conflicts with the DOT's contemplation that the jobs of housekeeping cleaner, cafeteria attendant, and produce weigher require "reaching in all directions[.]" (ECF No. 16 at 10–11).  In the first instance, as the ALJ noted (R. 29), the DOT definitions of each of these jobs are silent as to whether reaching in <u>all</u> directions is required, <u>see</u> DOT at 238, 241–42, 248 & Appendix C,[8]  <u>see</u> DOT code 323.687-014, 1991 WL 672783 (Housekeeping Cleaner); DOT code 311.677-010, 1991 WL 672694 (Cafeteria Attendant); DOT code 299.587-010, 1991 WL 672639 (Produce Weigher), and Ms. Crespo does not provide any authority for her assertion that they do.  (ECF No. 16 at 10–11).  Many courts have recognized that where the DOT is silent on an issue such as overhead reaching, the VE's testimony on that issue is not in conflict.  <u>See</u>, <u>e.g.</u>, <u>Diakogiannis v. Astrue</u>, 975 F. Supp. 2d 299, 319–20 (W.D.N.Y. 2013) (finding no conflict between VE's testimony concerning overhead reaching, and DOT, which did not address overhead reaching); <u>see also</u> <u>John B. v. Comm'r of Soc. Sec.</u>, No. 19 Civ. 1113 (JGW), 2021 WL 681283, at *4 (W.D.N.Y. Feb. 22, 2021) (collecting cases holding that "when the DOT is silent on an issue, no actual conflict exists between the VE testimony and the DOE"); <u>Reisinger v. Comm'r of Soc. Sec.</u>, No. 16 Civ. 428 (ATB), 2017 WL 2198965, at *10 (N.D.N.Y.  18, 2017) (collecting cases determining that "when the DOT does not specifically provide for a particular restriction, there is no actual conflict between the VE's testimony and the DOT").  Accordingly, "there was no apparent conflict that required the ALJ to elicit a reasonable explanation from the VE."  <u>Hernandez v. Comm'r of</u>

---

[8] The DOT is available at <u>https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT</u> (last visited Mar. 25, 2024).

Soc. Sec., No. 21 Civ. 10658 (VB) (JCM), 2022 WL 18402121, at *10 (S.D.N.Y. Dec. 16, 2022),

adopted by, 2023 WL 358780 (S.D.N.Y. Jan. 23, 2023).

In any event, while the DOT definitions of these three jobs suggest that a worker would

need to engage in frequent handling, they do not state that the worker must be able to perform

those tasks with both hands simultaneously.  See Colvin v. Berryhill, 734 F. App'x 756, 759

(2d Cir. 2018) (summary order) (noting that while DOT definitions of jobs claimant was able to

perform "require either frequent handling or constant fingering, they do not state that a worker

must be able to perform such fingering with both hands").  Ms. Crespo does not argue, nor could

she, that there is any evidence of an impairment to her right extremity, with which she retained

the ability to reach and lift in all directions.  See John B., 2021 WL 681283, at *4 (finding that

substantial evidence supported ALJ's RFC that limited claimant to occasional overhead reaching

with right arm only where DOT was silent on overhead reaching and VE identified available light-

work jobs based "his experience in the vocational field").  Thus, because Ms. Crespo's argument

about the VE's testimony amounts to a restatement of her other challenges to the ALJ's

determination of her RFC, it is unavailing for the reasons discussed above.  (See § III.B.1, supra).

See Wavercak v. Astrue, 420 F. App'x 91, 95 (2d Cir. 2011) (summary order) ("Because we have

already concluded that substantial record evidence supports the RFC finding, we necessarily

reject [the claimant's] vocational expert challenge."); Dritan Q., 2023 WL 7131858, at *8

(rejecting claimant's challenge to hypothetical questions ALJ posed to VE where court upheld RFC

determination).

Ms. Crespo's second challenge to the step five analysis—that because the position of

produce weigher had only 9,000 jobs were available there is not work for her existing in

significant numbers in the national economy—requires little analysis.  (ECF No. 16 at 11).  The ALJ Decision lists three positions, of which produce weigher was only one.  (R. 29).  The other two positions, housekeeping cleaner and cafeteria attendant, had 229,000 and 61,000 jobs in the national economy, respectively.  (Id.)  "The Commissioner need show only one job existing in the national economy that [Ms. Crespo] can perform."  Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (summary order) (citing 42 U.S.C. § 423(d)(2)(A) & 20 C.F.R. § 404.1566(b)); see Hamilton v. Comm'r of Soc. Sec., 105 F. Supp. 3d 223, 231 (N.D.N.Y. 2015) (noting that "numbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held significant"), adopted by, 105 F. Supp. 3d 223 (N.D.N.Y. 2015).  Thus, even if the 9,000 positions as a produce weigher were insufficient—which is likely not the case, see Sanchez v. Berryhill, 336 F. Supp. 3d 174, 177–78 (W.D.N.Y. 2018) (affirming ALJ decision that relied on VE testimony of, at a minimum, 9,046 jobs available to claimant and collecting cases holding that 9,000 to 10,000 jobs were significant)—the two other positions individually or combined with the produce weigher position more than adequately satisfy the Commissioner's burden at step five. See Valdes v. Comm'r of Soc. Sec., No. 21 Civ. 914 (VSB) (SN), 2022 WL 20380997, at *13 (S.D.N.Y. Aug. 11, 2022) (finding "combined total of over 13,000 positions available" satisfied step five burden, and noting that "courts have considered the total sum of all jobs put forward by the vocational expert, not each job individually"), adopted by, 2023 WL 4625524 (S.D.N.Y. July 18, 2023).

Accordingly, neither of Ms. Crespo's challenges undermine the Court's conclusions that the ALJ's reliance on the VE's testimony was proper and that substantial evidence supports the ALJ's step five determination.

IV.    **CONCLUSION**

For the reasons set forth above, Ms. Crespo's Motion is DENIED and the Commissioner's Motion is GRANTED.  The Clerk of the Court is respectfully directed to amend the caption to substitute "Martin O'Malley, Commissioner of Social Security" as the Defendant, close ECF Nos. 15 and 22, enter judgment in favor of the Commissioner, and close this action.

Dated:       New York, New York
             March 25, 2024

                              SO ORDERED.


                              _____
                              **SARAH L. CAVE**
                              **United States Magistrate Judge**